UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ZOLENSKY II, | No. 2:16-cv-00788-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| AMERICAN MEDFLIGHT, INC.; and DOES 1 THROUGH 10, inclusive, | |
| Defendant. | |

      Plaintiff Robert Zolensky II alleges in this lawsuit that defendant American Medflight, Inc. wrongfully terminated him when, instead of working his assigned shifts, Zolensky reported for duty as a Volunteer Firefighter and Paramedic. American Medflight alleges Zolensky has failed to state a claim upon which relief can be granted, and moves to dismiss. Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 7.[1] Zolensky opposes, Pl.'s Opp'n to Mot.

---

[1] In its motion to dismiss American Medflight failed to file a certification indicating the meet and confer efforts had been exhausted as required by this court's standing order, ECF. No. 3-1. The court ordered counsel for American Medflight to show cause as to why he shouldn't be sanctioned for this failure. ECF No. 11. American Medflight's counsel responded, explaining that the parties had in fact met and conferred but inadvertently failed to include a certification of these efforts. ECF No. 12. Zolensky's counsel filed a response, ECF No. 13, but "does not have a position on whether [American Medflight's] counsel should be sanctioned . . . ." The court finds that American Medflight has adequately shown good cause for its inadvertent failure to provide a certification of the parties' meet and confer efforts and no sanction shall be imposed.

("Pl.'s Opp'n"), ECF No. 10, and American Medflight has replied to Zolensky's opposition, Def.'s Reply Br. ("Def.'s Reply"), ECF No. 13.  The court held a hearing on July 29, 2016, at which Damion D. Robinson appeared for Zolensky and Anthony Lucas Hall appeared for American Medflight.  ECF No. 18.  As explained below, the court GRANTS American Medflight's motion to dismiss, with leave to amend.

I.	BACKGROUND

    A.	Factual Allegations

American Medflight employed Zolensky as a flight paramedic in Susanville, California from July 2013 through August 13, 2014.  Notice of Removal—Ex. A: Pl.'s Compl. ("Compl.") ¶¶ 6, 13, ECF No. 1-1.  In his job, Zolensky worked as a paramedic on American Medflight's aircraft in order to provide air ambulance services to individuals located in areas remote from hospitals and other medical facilities.  *Id.* ¶ 6.  Prior to accepting American Medflight's offer of employment, Zolensky informed American Medflight's Chief Flight Nurse that he was a Volunteer Firefighter and Paramedic, and that he may need to take leave on short notice in order to respond to emergencies.  *Id.* ¶ 7.  The Chief Flight Nurse informed him "that this would not be a problem . . . [and Zolensky] therefore accepted [American Medflight's] offer of employment.  *Id.*

On August 7, 2014, the fire department for which Zolensky volunteered informed Zolensky that he was being deployed to fight a fire.  *Id.* ¶ 8.  Before commencing his deployment, Zolensky contacted the Manager on Call, Scott Rule, who informed him that he could not take leave for his deployment unless he found coverage for his upcoming shifts.  *Id.* ¶ 9.  Zolensky was ultimately unable to find coverage for his shifts, *see id.* ¶ 10–11, but he left work and reported for duty as a Volunteer Firefighter and Paramedic anyway, *id.* ¶ 11.

On August 13, 2014, American Medflight terminated plaintiff's employment "on grounds of job abandonment."  *Id.* ¶ 13–14.  "Prior to his termination for job abandonment, [Zolensky] had received only positive feedback on his work performance from [American Medflight] and was an outstanding employee."  *Id.* ¶ 15.

/////

2

B. <u>Procedural History and Claims Raised</u>

On March 8, 2016, Zolensky filed this suit against American Medflight in Shasta County Superior Court. Notice of Removal, ECF No. 1. On April 18, 2016, American Medflight removed the case to this court based on diversity jurisdiction, *id.*, and thereafter filed the pending motion.

In his complaint, Zolensky alleges that American Medflight wrongfully terminated him in violation of California Labor Code section 230.3 and public policy, and intentionally inflicted emotional distress (IIED). *See generally* Compl. Zolensky seeks (1) general damages; (2) special and compensatory damages, including but not limited to, loss of wages, salary, benefits, back pay, front pay, future lost income and benefits, and other economic losses; (3) punitive or exemplary damages on each of his claims, and that such damages be trebled under California Civil Code section 3345; (4) civil penalties under California's Private Attorney General Act of 2004 (PAGA); (5) costs; (6) reasonable attorney's fees under California Labor Code section 2699(g); (7) prejudgment interest and post judgment interest as available by law; and (8) such other and further relief as this court may deem just and proper. *Id.* at 9.

In its motion to dismiss, American Medflight argues (1) Zolensky's allegations do not support a violation of California Labor Code section 230.3 because American Medflight qualifies for a statutory exemption as a provider of emergency services; (2) Zolensky's allegations fail to allege wrongful termination in violation of public policy because no public policy prohibited his termination; and (3) Zolensky's IIED claim fails because he does not allege the extreme and outrageous conduct necessary to support such a claim, and the claim is preempted by California's Workers' Compensation Act. *See generally* Def.'s Mot. Zolensky opposes the motion, arguing (1) the statutory exemption for emergency service providers does not apply; (2) he has stated a valid claim for termination in violation of public policy; and (3) the allegations in the complaint are sufficient to state an IIED claim, and the Workers' Compensation Act's exclusivity provisions do not prevent his recovery. *See generally* Pl.'s Opp'n. In the reply, American Medflight reiterates its original arguments while addressing Zolensky's opposition. *See generally* Def.'s Reply.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true its factual allegations. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*,

4

284 F.3d 977, 980 (9th Cir. 2002) (noting that even though the court may look beyond pleadings in analyzing a motion to dismiss, generally the court is limited to the face of the complaint).

### III.     DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

American Medflight requests the court take judicial notice of the following four exhibits:

> Exhibit 1 – public record search results from http://www.centralregistry.ca.gov/Verification/ for last name "Rule";
>
> Exhibit 2 – public record search results from http://www.centralregistry.ca.gov/Verification/ for last name "Zolensky";
>
> Exhibit 3 – termination letter from Scott Rule to Zolensky dated August 13, 2014; and
>
> Exhibit 4 – the declaration of Janice Beck authenticating Exhibit 3.

Def.'s Mot. 3.

On a motion to dismiss, as noted above, the court may take judicial notice of facts outside the complaint without converting the motion into one for summary judgment. *See, e.g.*, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A request for judicial notice must be granted "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). As this language implies, the party who requests judicial notice bears the burden to show the matter in question meets the description of Federal Rule of Evidence 201. *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011).

   A.     Exhibits 1 and 2

American Medflight argues the court may take judicial notice of Exhibits 1 and 2 because their contents are matters of public record. Def.'s Mot. 3. Zolensky counters that "Medflight does not submit any information – *e.g.*, an affidavit, declaration, certification –

5

1   showing that the website is an official public record." Pl.'s Evidentiary Objections 1–2, ECF
2   No. 10-1. Zolensky also raises evidentiary objections based on lack of authentication, lack of
3   foundation, and relevance. *See id.*
4       At this stage of the proceedings, the court need not address Zolensky's evidentiary
5   objections. *See Lodi Mem'l Hosp. Ass'n, Inc. v. Am. Pac. Corp.*, No. 2:14-CV-01865 JAM DAD,
6   2014 WL 5473540, at *2 (E.D. Cal. Oct. 20, 2014) ("At this early stage in the proceedings, these
7   objections are premature, and are better saved for argument within the briefs."); *Burch v. Regents*
8   *of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (declining to address evidentiary
9   objections raised in response to a motion to dismiss). Federal Rule of Evidence 201 allows
10  federal courts to take judicial notice of "[p]ublic records and government documents available
11  from reliable sources on the Internet," such as websites operated by governmental agencies. *See*
12  *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08–CV–1166–IEG, 2009 WL 6597891,
13  at *1 (S.D. Cal. Dec. 23, 2009) (citation omitted); *see also Daniels–Hall v. Nat'l Educ. Ass'n*,
14  629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two
15  school districts because they were government entities); *Paralyzed Veterans of Am. v.*
16  *McPherson*, No. 06–4670, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) ("[i]nformation on
17  government agency websites . . . [has] often been treated as proper[ly] subject[] to judicial
18  notice."). However, relevance is a threshold requirement of taking notice, and Exhibits 1 and 2
19  are not relevant to the court's decision below. Therefore, American Medflight's request is denied
20  as to Exhibit 1 and 2. *See U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1382
21  (C.D. Cal. 2014) (declining to take judicial notice of certain documents because they were not
22  relevant to deciding motion before the court); *Pac. Gas & Elec. Co. v. Lynch*, 216 F. Supp. 2d
23  1016, 1026 (N.D. Cal. 2002) (declining to take judicial notice of irrelevant settlement
24  documents).
25      B.   Exhibits 3 and 4
26      American Medflight also argues the court may take judicial notice of Exhibits 3
27  and 4 because "Zolensky refers to and relies on the letter of termination in his [c]omplaint."
28  Def.'s Mot. 3. The court "may consider evidence on which the complaint 'necessarily relies' if:

1  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and

2  (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v.*

3  *Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Zolensky does reference the letter of termination he

4  received in paragraph fourteen of his complaint. Compl. ¶ 14. Further, Zolensky's case arises

5  out of his wrongful termination; thus, the termination letter he received is "central" to his claim.

6  Lastly, Zolensky does not dispute the authenticity of Exhibit 3 but instead lodges a number of

7  other evidentiary objections to Beck's declaration, which the court need not and does not decide.

8  The court takes judicial notice of Exhibits 3 and 4.

IV.    DISCUSSION

     A.    California Labor Code Section 230.3

California Labor Code section 230.3(a) provides:

> (a) An employer shall not discharge or in any manner discriminate against an employee for taking time off to perform emergency duty as a volunteer firefighter, a reserve peace officer, or emergency rescue personnel.
>
> (b) An employee who is discharged . . . because the employee has taken time off to perform emergency duty as a volunteer firefighter . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. . . .
>
> (c) (1) Subdivisions (a) and (b) of this section shall not apply to any public safety agency or provider of emergency medical services if, as determined by the employer, the employee's absence would hinder the availability of public safety or emergency medical services.

Cal. Lab. Code § 230.3.

     American Medflight argues that under subdivision (c), it is exempt from the requirements subdivisions (a) and (b) because it is a provider of emergency services, and it determined Zolensky's absence would hinder the availability of emergency medical services. Def.'s Mot. 7–8; Ex. 3: Termination Letter, ECF No. 7-1. Addressing this argument, Zolensky characterizes subdivision (c) as an affirmative defense, and argues "[a] motion to dismiss based on an affirmative defense is improper unless the defense is obviously and conclusively

7

established from the face of the Complaint." Pl.'s Opp'n 4. Zolensky also argues American Medflight is not exempt under subdivision (c) because it is not a "provider of emergency medical services," *id.* at 7–8; and there is "a host of reasons why [Scott] Rule could have demanded that Zolensky find coverage that have nothing to do with hindering the availability of medical services[,]" including the possibilities that "it was inconvenient for [Scott] Rule to try to find coverage himself, that he did not want to fill in on Zolensky's shifts, hire a temporary replacement, or pay overtime . . . [or] he did not want Zolensky to take a leave," *id.* at 6.

Subdivision (c) is an element of any claim that an employer violated California Labor Code section 230.3, not an affirmative defense. *See USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 805 n.3 (9th Cir. 1994) (finding that a statutory exemption is "not an affirmative defense," but rather "an element of any claim that [defendants] violated the [ ] law[ ]"); *see also Wagner v. Edisonlearning, Inc.*, No. 09-831, 2009 WL 1055728, at *3 (S.D.N.Y. Apr. 17, 2009) (granting defendant's motion to dismiss when plaintiff failed to plead she was not subject to an exemption described in a subdivision of the statute she claimed entitled her to relief); *Pico v. Cty. of Cook*, No. 04-3559, 2004 WL 3670968, at *2–3 (N.D. Ill. Dec. 14, 2004) (granting defendant's motion to dismiss after finding a statutory exemption applied providing defendant absolute immunity from liability). Zolenksy thus bears the burden of pleading sufficient facts allowing the court to draw a reasonable inference that American Medflight is not exempt from liability under subdivision (c). *See Iqbal*, 556 U.S. at 678 (to survive motion to dismiss, plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)).

The question of whether a provider of paramedic services is a "public safety agency" or "provider of emergency medical services" under subdivision (c) is a question of law. *See California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 937 F.2d 465, 467 (9th Cir. 1991) (generalized statutory definitions raise questions of law for courts to decide); *KLC, Inc. v. Trayner*, 426 F.3d 172, 174 (2d Cir. 2005) ("the interpretation of a state statute and the definition of its terms presents a question of law"); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir.

1    2001) ("[Plaintiff] is incorrect in stating that whether [plaintiff] is disabled under the statute is 'a

2    material fact in dispute'. . . .  Whether [plaintiff] meets the definition of the statute . . . is a

3    question of law for a court, not a question of fact for a jury.").

4              In California, "public safety agency" is a generic term used to apply to employers

5    of peace officers, firefighters, and emergency medical personnel.  *See Calatayud v. State of*

6    *California*, 18 Cal. 4th 1057, 1059 n.1 (1998).  Under this broad definition, American Medflight,

7    which hired Zolensky as a flight paramedic to provide air ambulance services to individuals

8    located in areas remote from hospitals, Compl. ¶ 6, is a public safety agency.  American

9    Medflight also qualifies as a provider of "emergency medical services," defined as "the services

10   utilized in responding to a medical emergency."  Cal. Health & Safety Code § 1797.72; *see Valley*

11   *Med. Transp., Inc. v. Apple Valley Fire Prot. Dist.*, 17 Cal. 4th 747, 760 (1998) (ambulance

12   services a type of emergency medical services); *Mem'l Hosps. Assn. v. Randol*, 38 Cal. App. 4th

13   1300, 1308 (Cal. Ct. App. 1995) (emergency medical services includes ambulance services).

14             As to whether Zolensky has pled American Medflight did not make the required

15   determination that Zolensky's absence would hinder the availability of public safety or

16   emergency medical services, Zolensky contends that on August 7 his supervisor, Scott Rule, told

17   him he could not take leave for his deployment as a volunteer firefighter "unless he found

18   coverage for his upcoming shifts."  Compl. ¶ 9.  Zolensky was unable to secure the requisite

19   coverage for his shifts, *id.* ¶ 10, but he left work anyway, *id.* ¶ 11.  Then, on August 13, American

20   Medflight terminated Zolensky for "job abandonment."  *Id.* ¶ 13.  The termination letter, dated

21   August 13, specifically states that Zolensky's job abandonment "caused a potential health and

22   safety risk to all areas in which [American Medflight] [provides] service[s]."  Ex. 3:  Termination

23   Letter.

24             To survive a motion to dismiss, the Ninth Circuit has stated:

25   > When faced with two possible explanations, only one of which can
> be true and only one of which results in liability, plaintiffs cannot
26   > offer allegations that are merely consistent with their favored
> explanation but are also consistent with the alternative explanation.
27   > Something more is needed, such as facts tending to exclude the

28

>possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (quotation omitted).

Even when viewed in the light most favorable to Zolensky, Zolensky has not pled "the kind of factual allegations that 'nudge [his] claims across the line from conceivable to plausible.'" *See Eclectic Properties E.*, 751 F.3d at 997 (quoting *Twombly*, 550 U.S. at 570). From the facts pled and Zolensky's termination letter, it is plausible that Scott Rule required Zolensky to find coverage for his shifts because he had determined that Zolensky's absence would hinder American Medflight's ability to provide emergency medical services. Zolensky offers a "host of [other] reasons" for American Medflight's termination of him, but at best these other reasons are "merely consistent with [American Medflight]'s liability, [stopping] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). Zolensky does not plead facts that "tend[ ] to exclude the possibility of [American Medflight's] explanation." *See Eclectic Properties E.*, 751 F.3d at 996 (quotation omitted). For instance, even if American Medflight allowed flight nurses and pilots to fly on calls without a paramedic in the past, *see* Compl. ¶ 12, this does not give rise to the single inference that American Medflight was not hindered in providing emergency medical services by the lack of a paramedic on the days in question. The same can be said of Zolensky's allegation that Scott Rule had filled in during paramedic's absences in the past. *See id.* ¶ 10. Regarding Zolensky's contention that American Medflight did not, in actuality, suffer a loss of service, *see id.* ¶ 12, nothing in subdivision (c) requires the provider of emergency services to suffer an actual loss of services. Subdivision (c) requires only that the employer determine that the employee's "absence would hinder the availability of . . . emergency medical services." *See* Cal. Lab. Code § 230.3(c).

Zolensky has not pled sufficient facts to show he is entitled to relief under section 230.3 of the California Labor Code. To the extent he is able to amend his complaint to cure this

deficiency, while complying with Federal Rule of Civil Procedure 11, he will be given the opportunity.

>B.     *Tameny* Claim—Wrongful Termination in Violation of Public Policy

American Medflight argues "Zolensky cannot show that a public policy supported by either constitutional or statutory provisions substantially motivated his termination," as required to state a claim for wrongful termination in violation of public policy, and therefore, "his claim fails as a matter of law." Def.'s Mot. at 10. Specifically, American Medflight contends it "is expressly exempt from Labor Code [section] 230.3 because it is a provider of emergency medical services who determined Zolensky's absence would hinder its ability to provide [these] services[,] and thus section 230.3 cannot provide the public policy basis for Zolensky's wrongful termination claim." *Id.* at 11.

Zolensky counters that "Medflight's argument is misplaced" because "Medflight has not established that it is exempt from [s]ection 230.3." Pl.'s Opp'n 13. Zolensky also argues:

> Section 230.3 does not automatically exempt employers from its scope. Rather than balancing public policies to exclude certain employers, the Legislature requires the employer to make a determination of whether allowing leave would hinder the availability of emergency services. The same overarching policy is implicated – *i.e.*, the need for readily available services during an emergency – but [s]ection 230.3(c) leaves it to the employer to determine how to best fulfill this policy, either by requiring an employee to stay at work to provide those services, or giving him leave to provide them as a volunteer. . . . To the extent that an employer makes this determination in bad faith it would still violate the public policy underlying [s]ection 230.3, even if it could somehow establish a technical exemption from [s]ection 230.3.

*Id.* at 13–14.

In California, "an employer's traditional broad authority to discharge an at-will employee 'may be limited by considerations of public policy.'" *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 920 (Cal. Ct. App. 2014) (quoting *Tameny v. Atl. Richfield Co.*, 27 Cal.3d 167, 172 (1980)). A claim of wrongful termination, often dubbed a *Tameny* claim, requires a plaintiff show "(1) she was employed by [the defendant], (2) [the defendant]

11

1  discharged her, (3) a violation of public policy substantially motivated the discharge, and (4) the
2  discharge caused harm to her." *Id.*

3  In his complaint, Zolensky specifically alleges "[American Medflight] was
4  motivated to terminate [Zolensky] on grounds that violated public policy . . . ." Compl. ¶ 26.
5  Section 230.3's legislative history "expresses a strong public policy favoring the immediate
6  availability of all volunteer firefighters when emergencies arise." 78 Ops. Cal. Atty. Gen. 116
7  (Cal. A.G.), 1995 WL 274918; California Bill Analysis, A.B. 2536 Sen., 6/11/2014 ("Many
8  organizations within California rely upon the willing participation of qualified persons in the
9  event of a disaster. . . . [P]ersons who might otherwise sign up to be part of an organized disaster
10 response team, . . . may be reluctant to do so because they fear job loss or other retribution should
11 they need to take time off for training and/or event deployment."); *cf. Jennings v. Marralle*, 8 Cal.
12 4th 121, 135–36 (1994) (finding "[i]t would be unreasonable to expect employers who are
13 expressly exempted" from a statute "to nonetheless realize that they must comply with the law
14 from which they are exempted under pain of possible tort liability").

15 As stated in the previous section, however, Zolensky has not pled sufficient facts
16 to support his contention that American Medflight is not exempt from liability as an emergency
17 services provider under subdivision (c) of section 230.3. Therefore, Zolensky similarly has not
18 pled sufficient facts to support a *Tameny* claim at this stage. He may amend, if he can.

19 C.   IIED

20 American Medflight challenges Zolensky's IIED claim on two grounds. It first
21 argues that "Zolensky has failed to allege conduct that is sufficiently extreme or outrageous to
22 support an IIED claim as a matter of law." Def.'s Mot. 13. Secondly, American Medflight
23 argues the California Workers' Compensation Act provides the exclusive remedy for an
24 employee injured within the scope of his employment. *Id.* at 14, 16.

25  1.   Workers' Compensation Act's Exclusivity Provision

26 The Workers' Compensation Act provides "the exclusive remedy for injury or
27 death of an employee against any other employee of the employer acting within the scope of his
28 or her employment." Cal. Lab. Code § 3601(a). "[A]n employee's emotional distress injuries are

12

subsumed under the exclusive remedy provisions of workers' compensation," so long as the employer's conduct does not give rise to an exemption because it "contravenes fundamental public policy" or "exceeds the risks inherent in the employment relationship." *Livitsanos v. Super. Ct.*, 2 Cal. 4th 744, 754 (1992). Emotional distress injuries arising from "workplace discipline, including termination, fall within this rule." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014) (citing *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987)).

As to the first exception for employer conduct contravening a fundamental public policy, the California Supreme Court has expressly limited its application to *Tameny* claims. *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 898 (2008). Courts have relied on this precedent to hold that IIED claims are barred by the Workers' Compensation Act's exclusivity provisions. *See Langevin v. Fed. Exp. Corp.*, No. CV 14-08105, 2015 WL 1006367, at *10 (C.D. Cal. Mar. 6, 2015) (citing cases following *Miklosy*). Accordingly, plaintiff's IIED claim does not fall under the exemption to California's Workers' Compensation exclusivity provision on public policy grounds.

As to the second exception, available when the risks inherent in the employment relationship are exceeded, in *Shoemaker v. Myers* the California Supreme Court reasoned:

> To the extent plaintiff purports to allege any distinct cause of action, not dependent upon the violation of an express statute or violation of fundamental public policy, but rather directed at the intentional, malicious aspects of defendants' conduct ('to cause [plaintiff] as much grief as possible'), then plaintiff has alleged no more than . . . [a claim] that the employer's conduct caused him to suffer personal injury resulting in physical disability. . . . The kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship. Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions.

52 Cal. 3d 1, 25 (1990). Subsequently, "[i]n *Miklosy*, the California Supreme Court held that workers' compensation is the exclusive remedy for any physical or emotional injuries that occur in the normal course of an employer-employee relationship." *Cartwright v. Regents of Univ. of Cal.*, No. 05-02439, 2009 WL 2190072, at *9 (E.D. Cal. July 22, 2009) (internal citation

13

1   omitted).  In *Miklosy*, the California Supreme Court reaffirmed that whistleblower retaliation
2   remains a risk inherent in the employment relationship.  The Court looked to *Shoemaker*, and
3   reaffirmed that a whistleblower retaliation claim may not be asserted as an IIED claim due to the
4   Workers' Compensation Act's exclusivity provisions.  *Miklosy*, 44 Cal. 4th at 902–03.  Some
5   courts after *Miklosy* have found that IIED claims based upon alleged discrimination do fall
6   outside the normal course of an employer-employee relationship and thus are not barred by the
7   Act's exclusivity provisions.  *See Negherbon v. Wells Fargo Bank*, Case No. 15-02368, 2015 WL
8   6163570, at *10 (N.D. Cal. October 21, 2015) (exclusivity provisions do not clearly bar an IIED
9   claim based on illegal discrimination and harassment); *Elowson v. Jea Senior Living*, No. 14-
10  02559, 2015 WL 2455695, at *5 (E.D. Cal. May 22, 2015) (internal citation omitted) (reasoning
11  that while "misconduct such as demotions, criticism and retaliation is a part of and within the
12  risks inherent in the employment relationship," "[d]iscrimination based on race, religion, age, or
13  gender is not a normal risk inherent in employment, and therefore workers' compensation is not
14  the exclusive remedy" under *Miklosy*); *but cf. Webb v. Cty. of Trinity*, 734 F. Supp. 2d 1018, 1035
15  (E.D. Cal. 2010) (reasoning that the holding in *Miklosy* acts as a general bar against a "plaintiff's
16  claim for intentional infliction of emotional distress").

17           In this case, although Zolensky alleges that American Medflight's actions "fall
18  outside the normal course and scope of the bargained for employment relationship," *see* Compl.
19  ¶ 43, he offers no facts to show American Medflight discriminated against him in a way that
20  would exclude his IIED claim from the Workers' Compensation Act's exclusivity provisions,
21  such as discrimination based on race, religion, age, or gender.  Because Zolensky's emotional
22  distress claim neither "contravenes fundamental public policy" nor "exceeds the risks inherent in
23  the employment relationship," *see Livitsanos*, 2 Cal. 4th at 754, it is subsumed by the California's
24  Worker's Compensation Act.

25  V.      CONCLUSION

26          "Leave to amend should be granted unless the district court 'determines that the
27  pleading could not possibly be cured by the allegation of other facts.'"  *Knappenberger v. City of*
28  *Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

Cir. 2000)); *see also* Fed. R. Civ. Proc. 15. Because amendment has not been shown to be futile, plaintiff's complaint is DISMISSED, with leave to amend taking account of the analysis provided above.

This order resolves ECF Nos. 7, 10, and 13.

IT IS SO ORDERED.

DATED: March 24, 2017.

_____
UNITED STATES DISTRICT JUDGE